UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

SECURITIES INVESTOR PROTECTION
CORPORATION,                                                          Adv. Pro. No. 08-01789 (BRL)

                Plaintiff-Applicant,               SIPA Liquidation

     v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                Defendant.
--------------------------------------------------------X

ROSENMAN FAMILY, LLC,                                              Adv. Pro. No. 09-01000 (BRL)

                Plaintiff,

     v.

IRVING H. PICARD, as Trustee for the SIPA
Liquidation of BERNARD L. MADOFF
INVESTMENT SECURITIES LLC, and
JP MORGAN CHASE BANK, NA,

                Defendants.
--------------------------------------------------------X

APPEARANCES:

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
By:    David J. Sheehan
        Seanna R. Brown
*Attorneys for Irving H. Picard, Esq.,*
*Trustee for the SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*

SECURITIES INVESTOR
PROTECTION CORPORATION
805 Fifteenth Street, N.W., Suite 800
Washington, DC 20005
Telephone: (202) 371-8300
Facsimile: (202) 371-6728

By:    Josephine Wang, General Counsel

WACHTEL & MASYR, LLP
110 East 59th Street
New York, NY 10022
Telephone: (212) 909-9500
Facsimile: (212) 909-9490
By:    Howard Kleinhendler
       Sara Spiegelman
*Attorneys for Rosenman Family, LLC*

Before: Hon. Burton R. Lifland
        United States Bankruptcy Judge

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR AN ORDER DISMISSING PLAINTIFF'S COMPLAINT

Before this Court is the motion ("Motion to Dismiss") of Irving H. Picard, Esq., Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("Trustee" or "Defendant"), seeking to dismiss the complaint (the "Complaint") of Rosenman Family, LLC ("Plaintiff") filed in the above-captioned adversary proceeding. Trustee asserts that the Complaint violates the extant stays imposed by a District Court order and by statute,[1] and in addition, fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Federal Rules"), made applicable herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure. The Securities Investor Protection Corporation ("SPIC") joins in the Trustee's Motion to Dismiss.

The Complaint seeks declaratory and injunctive relief to recover $10 million that was wired to a Bernard L. Madoff Investment Securities LLC ("BMIS") JP Morgan Chase Account just ten days before the commencement of this Securities Investor Protection Act liquidation proceeding. Rosenman alleges that because, *inter alia*, Madoff was a thief, BMIS never obtained legal, beneficial, or equitable title to the funds transferred and seeks their immediate return.

---

[1] 11 U.S.C. § 362(a)(3); 15 U.S.C. § 78eee(b)(2)(B)(i).

For the reasons set forth below and at oral argument, the Trustee's motion is hereby granted.

## BACKGROUND

### I.  Events Preceding the Complaint

The Complaint arises in connection with the well-publicized Ponzi scheme[2] allegedly perpetrated by Bernard L. Madoff through his investment company, BMIS.  BMIS is a broker-dealer and investment advisor founded by Bernard L. Madoff.  As a broker-dealer registered with the Securities and Exchange Commission ("SEC"), BMIS is a member of SIPC.[3]  On December 11, 2008, Madoff was arrested by federal agents and charged with securities fraud in violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5, in the United States District Court for the Southern District of New York ("District Court").  *United States v. Madoff*, No. 08-MJ-02735.  That same day, a civil complaint was filed in the District Court by the SEC, alleging, *inter alia*, that Madoff and BMIS were operating a Ponzi scheme though BMIS's investment advisor activities.  *SEC v. Madoff, et al.,* No. 08-CV-10791 (the "Civil Action").

On December 15, 2008, SIPC filed an application in the Civil Action seeking a decree adjudicating the customers of BMIS in need of the protections afforded under the Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa *et seq.* ("SIPA").[4]  The District Court granted

---

[2] According to Black's Law Dictionary, a Ponzi scheme is "[a] fraudulent investment scheme in which money contributed by later investors generates artificially high dividends for the original investors, whose example attracts even larger investments.  Money from the new investors is used directly to repay or pay interest to earlier investors, usu. without any operation or revenue-producing activity other than the continual raising of new funds."  BLACK'S LAW DICTIONARY 1198 (8th ed. 2004).  Accordingly, "[w]hen a debtor operating a Ponzi scheme makes a payment with the knowledge that future creditors will not be paid, that payment is presumed to have been made with actual intent to hinder, delay or defraud other creditors . . . ."  *In re Manhattan Inv. Fund Ltd.*, 310 B.R. 500, 509 (Bankr. S.D.N.Y. 2002).

[3] "SIPC is a 'nonprofit, private membership corporation, to which most registered brokers and dealers are required to belong.'"  *In re New Times Secs. Servs., Inc.*, 371 F.3d 68, 72 n.3 (2d Cir. 2004) (quoting *Sec. Investor Prot. Corp. v. Barbour,* 421 U.S. 412, 416 (1975)).  SIPC was created by the Securities Investor Protection Act of 1970 and insures customers of SIPC members in case a broker-dealer liquidates.  *Id.* (citing *Sec. Investor Prot. Corp. v. BDO Seidman, LLP,* 222 F.3d 63, 66 (2d Cir. 2000)).

[4] In-text references to sections of SIPA hereinafter shall omit "15 U.S.C."

the SEC's application and entered an order on December 15, 2008, placing BMIS's customers under the protections of SIPA ("Protective Order").  The Protective Order appointed Defendant as trustee for the liquidation of the business of BMIS and removed the SIPA liquidation proceeding to this court pursuant to SIPA § 78eee(b)(3) and (b)(4), respectively.

## II.  The Rosenman Complaint

The motion before this court seeks to dismiss the Complaint of Rosenman Family, LLC ("Rosenman"), a New York limited liability company who had the misfortune of entrusting funds with Madoff shortly before the commencement of this SIPA liquidation proceeding.

The Complaint was filed on January 1, 2009, against Irving H. Picard, the SIPA Trustee, and JP Morgan Chase Bank, NA.  Plaintiff alleges that on or about December 3, 2008, Rosenman's managing member, Martin Rosenman, spoke with Madoff by telephone concerning Rosenman's possible investment into BMIS's investment advisory fund.  Madoff allegedly advised Mr. Rosenman that the fund was closed until January 1, 2009, but stated that Mr. Rosenman could wire money to a BMIS account where it would remain until the fund reopened. On December 5, 2008, after receiving wiring instructions from a BMIS employee, Mr. Rosenman transferred $10 million to a BMIS account at JP Morgan Chase (the "Chase Account").  Soon thereafter, on December 9, 2008, Mr. Rosenman received a "Confirmation" from BMIS, with a customer account number, stating that Rosenman had "shorted" $10 million in Treasury Bills maturing on March 26, 2009.  Rosenman asserts, however, that the trade never took place, nor was ever authorized.

**DISCUSSION**

**I.    Rule 12(b)(6) of the Federal Rules of Civil Procedure**

When considering a motion to dismiss under Federal Rule 12(b)(6), a court must accept all factual allegations in the complaint as true, even if the allegations are doubtful in fact. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."). A court's function is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir. 1985). Therefore, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir. 1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 235–36 (1974)).

However, the plaintiff cannot merely plead "labels and conclusions" and provide a "formulaic recitation of a cause of action's elements." *Twombly*, 127 S. Ct. at 1965. Rather, the plaintiff must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007).

**II.    Securities Investor Protection Act of 1970**

SIPA was enacted by Congress in response to the "disastrous" losses incurred by customers following the failure of brokerage firms in 1969 and 1970. *Sec. Investor Prot. Corp. v. Barbour*, 421 U.S. 412, 415 (1975); *In re Adler Coleman Clearing Corp.*, 195 B.R. 266, 269 (Bankr. S.D.N.Y. 1996) (citing *In re Bevill, Bresler & Schulman, Inc.*, 83 B.R. 880, 886 (D.N.J. 1988)). Congress's primary purpose in enacting SIPA was "to protect investors against financial

loses arising from the insolvency of their brokers," *SEC v. S.J. Salmon & Co.*, 375 F. Supp. 867, 871 (S.D.N.Y. 1974), and reestablish investor confidence in capital markets. *Barbour*, 421 U.S. at 415; *New Times Secs. Servs., Inc.*, 463 F.3d 125, 127 (2d Cir. 2006); *Adler Coleman*, 195 B.R. at 269. In order to foster its purpose, SIPA establishes procedures for liquidating financially troubled SIPC members[5] and provides claimants who qualify as "Customers"[6] priority over "Customer Property."[7] *New Times Securities*, 463 F.3d at 127; *Adler Coleman*, 195 B.R. at 269.

A SIPA proceeding is initiated by the filing of an application by SIPC for a protective decree adjudicating the customers of a SIPC member in need of the protections provided under SIPA. 15 U.S.C. § 78eee(a)(3); *Barbour*, 421 U.S. at 416. An application is filed if SIPC determines that a member has failed or is in danger of failing to meet its customer obligations and finds that one or more conditions under SIPA § 78eee(b)(1) is satisfied. 15 U.S.C. § 78eee(a)(3); *Barbour*, 421 U.S. at 416. If the SIPC member fails to contest or consents to the application, or the court determines that one or more of the conditions enumerated in SIPA § 78eee(b)(1) exists, the court must issue the protective decree. 15 U.S.C. § 78eee(b)(1); *Barbour*, 421 U.S. at 416–17. Upon the issuance of the protective decree, the court is required to appoint a trustee who will liquidate the business of the SIPC member and distribute Customer Property to Customers on a pro rata basis. 15 U.S.C. §§ 78eee(b)(3), fff-2(b), (c); *see Barbour*, 421 U.S. at 417.

Unsecured claimants in a SIPA liquidation are generally classified as either Customers or general unsecured creditors of the SIPC member. *Adler Coleman*, 195 B.R. at 270. As a result, a SIPA proceeding generally involves two estates from which customer claims and general

---

[5] SIPA § 78ccc(a)(2)(A) defines those brokers and dealers who are required to register as SIPC members. Customers of SIPC members are afforded the protections provided under SIPA. *See also* 15 U.S.C. § 78eee(a)(3).
[6] 15 U.S.C. § 78*lll*(2).
[7] 15 U.S.C. § 78*lll*(4).

unsecured claims are satisfied.  *Id.*  The first is the general estate and is the only estate from which general unsecured creditors[8] can seek satisfaction of their claims.  *Id.*  The second, and relevant estate, is the Customer estate.  The Customer estate is a fund consisting of Customer Property and is limited exclusively to satisfying Customer claims.  *In re Adler, Coleman Clearing Corp. (Alder Coleman II)*, 216 B.R. 719, 722 (Bankr. S.D.N.Y. 1998) ("A SIPA trustee distributes 'customer property' exclusively among the debtor's customers . . . .")*; see also* 15 U.S.C. § 78*lll*(4).[9]  Accordingly, Customers, as defined by SIPA § 78*lll*(2), enjoy a preferred status and are afforded special protections under SIPA.  *See New Times Securities*, 463 F.3d at 127; *Adler Coleman*, 195 B.R. at 269.

## III.  Rosenman is a BMIS "Customer" as Defined by SIPA

Based upon the Plaintiff's allegations, Rosenman qualifies as a BMIS "Customer."  SIPA § 78*lll*(2) defines "Customer," in relevant part, as "any person . . . who has deposited cash with the debtor for the purpose of purchasing securities."  Accordingly, the mere "act of *entrusting* . . . cash to the debtor for the purpose of effecting securities transactions . . . triggers customer status . . . ."  *In re ESM Gov. Secs., Inc.*, 812 F.2d 1374, 1376 (11th Cir. 1987); *see Sec. Investor. Prot. Corp. v. Stratton Oakmont, Inc.*, 229 B.R. 273, 279 (Bankr. S.D.N.Y. 1999).   Treating the allegations in the Complaint as true, as must be done on a motion to dismiss, Rosenman is a BMIS Customer as defined by SIPA.  Here, the Plaintiff wired funds to a BMIS Chase Account for the purpose of investing in BMIS's investment advisory fund.  Accordingly, Rosenman clearly qualifies as a BMIS Customer and can share in Customer Property.

---

[8] "[D]enying 'customer' status relegates an investor to the status of a general unsecured creditor . . . ."  *Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 229 B.R. 273, 277 (Bankr. S.D.N.Y. 1999).

[9] If Customer Property proves to be insufficient, SIPA will advance up to $500,000 to the SIPA trustee to satisfy each claim.  15 U.S.C. § 78fff-3(a); *see New Times Securities*, 463 F.3d at 127.

Plaintiff's opposition papers argue that Rosenman is not a Customer because it never entrusted funds with BMIS for the purpose of purchasing securities. Rather, Rosenman alleges, funds were wired to the Chase Account with the understanding that Madoff would hold the funds until the fund reopened, at which point Rosenman could decide whether or not to invest. Additionally, although not stated in the Complaint, Plaintiff alleges that during the December 3, 2008 telephone conversation, Plaintiff and Madoff agreed to meet in January 2009 at which time Madoff would explain his investment strategy and Rosenman would determine whether to allow BMIS to invest on its behalf.

Despite the additional facts provided and the Plaintiff's attempt to alter the facts presented in the Complaint, Plaintiff's status as a Customer of BMIS remains unaffected. As emphasized by Rosenman in its opposition papers, the funds were wired and held at the Chase Account for the purpose of investing when the fund reopened. Regardless of whether the funds were to be invested immediately or upon Rosenman's authorization, the fact remains that the sole purpose of wiring funds to the Chase Account was to effectuate future securities transactions. Like all BMIS Customers who deposited funds with BMIS, Rosenman relinquished all control over the funds once the wire was processed. Plaintiff makes no allegation that the funds were to be escrowed or segregated from other Customer funds, or that the Chase Account was a separate holding fund. Moreover, the submitted documentation of transfer does not demonstrate any conditional delivery of the funds. Accordingly, the purchase/investment purpose necessary to establish Customer status was triggered at the moment funds were deposited in the Chase Account. Thus, Rosenman is a BMIS Customer as defined by SIPA.[10]

---

[10] Plaintiff's attempt to compare the circumstances surrounding the allegations in the Complaint to a thief who breaks into an individual's home and steals money is completely unfounded. Unlike the victim of a theft, Plaintiff voluntarily entrusted funds with BMIS for a purpose; namely, to purchase securities through BMIS.

**IV.   The Funds Wired by Rosenman to the Chase Account constitute "Customer Property" and must be Allocated in Accordance with SIPA**

The funds wired by Rosenman constitute Customer Property as defined by SIPA.  SIPA §

78*lll*(4) defines Customer Property, in relevant part, as:

> "cash and securities . . . at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property <u>unlawfully converted</u>." (emphasis added).

15 U.S.C. § 78*lll*(4).  "Essentially, the fund of customer property includes all property that was

or should have been set aside for customers" and includes "bank accounts containing customer

funds."  6 COLLIER ON BANKRUPTCY ¶ 741.05[1] at 741-14 (15th ed. rev. 1997) (defining

"customer property" under section 741(4) of Bankruptcy Code and stating "the Bankruptcy

Code's definition of customer property closely parallels that of SIPA"); s*ee Adler Coleman II*,

216 B.R. at 727 n.3.  The funds deposited in the Chase Account clearly fall within this definition.

Based upon the allegations in the Complaint, the BMIS Chase Account contains funds that were

deposited by the Plaintiff.  Accordingly, since the Plaintiff is a Customer, and the funds are being

held in a BMIS bank account, the funds wired constitute Customer Property.

Because the funds deposited in the Chase Account constitute Customer Property, they

must be allocated in accordance with the provisions of SIPA and may not be returned to the

Plaintiff.  SIPA § 78fff-2(c)(1)(B) states that the SIPA trustee "shall allocate" Customer Property

to the "customers of such debtor, who shall share ratably in such customer property on the basis

and to the extent of their respective net equities."[11]  Accordingly, the Trustee is explicitly

directed to distribute Customer Property pro rata among claimants who qualify as Customers;

---

[11] "Net Equities" equals "the difference between the amount the debtor would owe the customer were all the securities and cash balances [that were entrusted to the debtor by the customer] valued as of the filing date, and the amount of any indebtedness of the customer to the debtor as of the filing date." *Adler Coleman II*, 216 B.R. at 722.

any contrary distribution of the Funds in the Chase Account would preclude the Trustee from exercising his statutorily mandated duties and run afoul of the clear command of SIPA.[12]

## CONCLUSION

Although the court is sympathetic to the circumstances surrounding the Plaintiff's allegations, the Plaintiff's predicament is indistinguishable from other similarly situated BMIS Customers. Like other BMIS Customers, Plaintiffs deposited funds with BMIS for the purpose of investing in securities. The only difference between Plaintiffs and other BMIS Customers is the time prior to the commencement of this proceeding at which funds were entrusted with BMIS. However, this timing difference is completely irrelevant for purposes of determining Customer Property and Customer status. Therefore, there is simply no basis in law for affording Plaintiff special treatment.

In view of the declaratory finding that the $10 million deposit is a customer deposit, and since the Trustee does not seek sanctions, the court need not consider the issue of whether the various extant stays have been violated.

Accordingly, the Motion to Dismiss is hereby granted.

IT IS SO ORDERED.


Dated: New York, New York
       February 24, 2009


                                        /s/Burton R. Lifland
                                        UNITED STATES BANKRUPTCY JUDGE

---

[12] Rosenman seems to couch his claims for relief in state or common law. However, such claims, even if they existed, would be superseded by the Supremacy Clause of the United States Constitution. U.S. CONST., Art. VI, cl. 2; *see In re Bevill, Bresler & Schulman, Inc.*, 59 B.R. 353, 378 (Bankr. D.N.J. 1986) (holding state law entitling Customer to possession of Customer Property would be inconsistent with SIPA and preempted under Supremacy Clause of United States Constitution). Accordingly, this court will not entertain any form of relief grounded in state or common law which runs counter to SIPA.